UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 50056 |
| v. | |
| JACOB BALABUSZKO | Judge Iain D. Johnston |

### PLEA AGREEMENT

1.     This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant JACOB BALABUSZKO, and his attorney, JOHN M. NELSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with threatening to assault and murder a federal law enforcement officer, in violation of Title 18, United States Code, Section 115(a)(1)(B) (Count One), and possession of a firearm and ammunition by a prohibited person, in violation of Title 18, United States Code, Section 922(g)(1) (Count Two).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with threatening to assault and murder a federal law enforcement officer, in violation of Title 18, United States Code, Section 115(a)(1)(B); and Count Two, which charges defendant with possession of a firearm and ammunition by a prohibited person, in violation of Title 18, United States Code, Section 922(g)(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count One of the superseding indictment:

On or about August 18, 2021, in the Northern District of Illinois, Western Division, defendant, did threaten to assault and murder a Federal law enforcement

2

officer, with intent to impede, intimidate, and interfere with such law enforcement officer while engaged in the performance of official duties, and with intent to retaliate against such law enforcement officer on account of the performance of official duties; to wit, in that defendant threatened to assault and murder Federal Bureau of Investigation Task Force Officer D.D. and Federal Bureau of Investigation Special Agent G.H.; namely, that defendant stated, in effect:

    a. My name is Jacob Balabuszko, this is not a test. Agent [D.D.], Agent [G.H.], I will fuck both of you in your cute little butts. It's not even 'cause I actually think you're cute, it's just so that you can feel like less of men. Because you're not, go fuck yourselves, again, or maybe I will.

    b. Next time you two come to my house unannounced, I'm going to shoot you on sight, that is a threat.

in violation of Title 18, United States Code, Section 115(a)(1)(B).

Specifically, on or about December 1, 2020, in Douglas County, Illinois, Federal Bureau of Investigation Task Force Officer ("FBI TFO") D.D. and Federal Bureau of Investigation Special Agent ("FBI SA") G.H. interviewed defendant in the performance of their official duties. On or about January 15, 2021, in South Beloit, Illinois, FBI TFO D.D. and FBI SA G.H. again interviewed defendant in the performance of their official duties.

Beginning no later than June 7, 2021, defendant admits he was a member of multiple Signal chat groups used by members of the Boogaloo Bois. Defendant acknowledges that Signal is an encrypted messaging application commonly used on

smart phones that allows users to share messages directly from one person to another, group messages, and messages which include voice notes, files, images, and videos. Defendant also acknowledges that Signal can be used to make voice and video calls from one person to another, as well as group voice and video calls.

On or about June 7, 2021, in a Signal chat group used by defendant and other Boogaloo Bois, various members discussed organizing a meeting of Boogaloo Boi members. In that discussion, defendant sent the following messages: "Yeah the more the better. I have a pretty spicy plan I'm trying to lay out...Well I'm gonna incriminate the shit out of myself with some of the shit I have to say, and if I get snatched the informant will be blasted." Defendant admits that, in the context of those messages, he was threatening to expose anyone who cooperated with law enforcement if defendant was arrested.

On or about June 11, 2021, again in a Signal chat group used by defendant and other Boogaloo Bois, defendant sent a message mentioning moving in a few days. In that Signal chat group, another user indicated that he/she hoped defendant was not moving next door, and defendant replied that, "no. But honestly I would have liked that. I'd be able to set the blue boys up for a raid at the old address and have an ambush ready from the roofs 24/7." Defendant admits that in that message he was stating that he wanted to ambush law enforcement and thereby interfere with their lawful duties.

4

On or about June 21, 2021, defendant escalated his rhetoric and incited members of a Signal chat group used by defendant and other Boogaloo Bois to take action. Defendant, complaining about criminal charges that had been brought against him in Douglas County, Illinois, had engaged in the following exchange on the Signal chat group:

| | |
|---|---|
| Defendant: | They need to be afraid |
| Defendant: | When I say I'm running out of time I'm not fucking kidding |
| Defendant: | I'm ready to have this conversation in here. I don't think any of you are feds |
| Defendant: | But none of you will let it here to hear what I have to say so I'm going to say it here |
| Defendant: | This is a call for action, and the necessary level of violence to complete said action |
| Defendant: | The things they do cannot be brushed off, downplayed, or ignored anymore. Y'all will end up like me eventually if we don't all start fucking them back. |
| User 1: | Fuck them all . Sick mother fuckers |
| Defendant: | I want badges, I want a collection of nasty, dented, piss and blood coated badges to put on my wall |
| Defendant: | If y'all aren't ready to have this conversation you never should've come here. That was the premise of this group. I think we've kept the retards and feds at enough distance to be honest with ourselves and each other. |

5

Defendant admits that in that message exchange he was inciting violence against law enforcement officers.

On or about June 21, 2021, defendant sent the following additional messages to a Signal chat group used by defendant and other Boogaloo Bois:

Defendant: All of us need to start doing shit to add to their workload. Pop their tires with a .22, pull down their CCTV cameras, burn their fucking houses down. Anything to make their job impossible to do

Defendant: But as far as I'm concerned I'm backed into a corner. I have a decision to make about what I will allow to happen. If I let them fuck me [username] they will profit off of it and empower them to do more harm. The only thing we can do that will make this worse is nothing

Defendant: I either need to hide and make them afraid to find me, or I need a team to kick this shit off

Defendant: But doing nothing is not something I can do anylonger. Dereliction of duty is a sin I cannot carry anymore

Defendant admits that in those messages he was inciting violence against law enforcement officers and trying to obstruct the performance of their official duties, including by shooting tires of law enforcement vehicles, removing law enforcement surveillance cameras, and targeting law enforcement officers' homes. Defendant also admits that in those messages he was saying that he planned to use violence and threats against law enforcement officers to make them too afraid to find defendant to arrest him or defendant was going to get a group of individuals to actively go out and

commit violent acts against law enforcement officers, thereby interfering with their lawful duties.

On or about August 18, 2021, defendant admits that he continued his anti-law enforcement rhetoric by specifically threatening two federal law enforcement officers, FBI TFO D.D. and FBI SA G.H. More specifically, defendant admits that on or about August 18, 2021, he sent several audio messages to a Signal chat group used by defendant and other Boogaloo Bois. In those audio messages, defendant admits that he made the following statements:

    a.  My name is Jacob Balabuszko, this is not a test. Agent [D.D.], Agent [G.H.], I will fuck both of you in your cute little butts. It's not even 'cause I actually think you're cute, it's just so that you can feel like less of men. Because you're not, go fuck yourselves, again, or maybe I will.

    b.  Next time you two come to my house unannounced, I'm going to shoot you on sight, that is a threat.

Defendant admits that in the context of those statements he threatened to assault and murder FBI TFO D.D. and FBI SA G.H., two federal law enforcement officers, whom defendant then knew were federal law enforcement officers. Defendant further admits that he threatened to assault and murder those two federal law enforcement officers with the intent to impede, intimidate, and interfere with them while engaged in the performance of their official duties.

Defendant further admits that the statements he made on or about August 18, 2021, referenced above, were serious expressions of an intention to inflict bodily harm

upon and take the life of FBI TFO D.D. and FBI SA G.H., and that such threats were not merely idle or careless talk, exaggeration, or something said by defendant in a joking manner. Defendant admits the motivation for his threats were, as stated above, to expose any informant embedded in the Signal chat group. The threats were made with the intent to interfere with the law enforcement officials and impede them while they were engaged in the performance of their official duties, namely the investigation of defendant's Signal chat group. Defendant also admits that when he made those threats against FBI TFO D.D. and FBI SA G.H., that he had the capacity to carry out such threats upon them. Finally, defendant admits that when he made those statements he lived in Machesney Park, Illinois, and was then in the Northern District of Illinois, Western Division.

On or about October 20, 2021, defendant sent a message to a Signal chat group used by defendant and other Boogaloo Bois that contained a photograph of a business card for FBI TFO D.D. Defendant also sent an audio message on the Signal chat group in which he said that FBI TFO D.D. was the agent in charge of harassing him and a fellow Boogaloo member, and went on to say, "I've said this here before, fuck that bald asshole. If he shows up here and fucks with our birds or our kitties, I'm gonna break bottles over his head until he fucking dies." Defendant admits that in that statement he was threatening to assault and kill FBI TFO D.D.

b. With respect to Count Two of the superseding indictment:

On or about November 5, 2021, at Machesney Park, in the Northern District of Illinois, Western Division, defendant, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce, a firearm and ammunition, namely: a D.S. Arms, model ZM4, multi-caliber, semi-automatic rifle with serial number DFS008914; a loaded Savage, model 775, caliber 12-gauge, semi-automatic shotgun with serial number 219890; eleven rounds of Wolf Performance Ammunition, .223 Remington ammunition; thirty-nine rounds of Red Army Standard, 9mm Makarov ammunition; one round of Wolf Performance Ammunition, 7.62x39mm ammunition; one round of Remington Arms Company, 12-gauge ammunition; and five rounds of Remington Arms Company, 30-06 ammunition, which firearm and ammunition previously had traveled in interstate commerce prior to the defendant's possession of the firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

Specifically, on or about November 5, 2021, defendant knowingly possessed two firearms and multiple rounds of ammunition stored inside of his residence in Machesney Park, Illinois. The two firearms defendant knowingly possessed were a D.S. Arms, model ZM4, multi-caliber, semi-automatic rifle with serial number DFS008914, and a loaded Savage, model 775, caliber 12-gauge, semi-automatic shotgun with serial number 219890. Both of those firearms were stored in defendant's bedroom. The multiple rounds of ammunition defendant knowingly possessed

9

include, in part, eleven rounds of Wolf Performance Ammunition, .223 Remington ammunition; thirty-nine rounds of Red Army Standard, 9mm Makarov ammunition; one round of Wolf Performance Ammunition, 7.62x39mm ammunition; one round of Remington Arms Company, 12-gauge ammunition; and five rounds of Remington Arms Company, 30-06 ammunition. Those specific rounds of ammunition were stored in defendant's bedroom.

Defendant admits that at the time he possessed the firearms and ammunition, he knew that he had been convicted of a crime punishable by a term of imprisonment exceeding one year, as described in paragraph 9(c)(i) below. Defendant acknowledges that the two firearms and the specific ammunition listed herein that he possessed on or about November 5, 2021, were manufactured outside the State of Illinois, and therefore traveled in interstate commerce prior to his possession of the firearms and ammunition.

Defendant also admits that he possessed the following items located in his residence on or about November 5, 2021: a business card belonging to FBI TFO D.D., ammunition, and body armor.

Finally, defendant admits that he possessed the D.S. Arms, model ZM4, multi-caliber, semi-automatic rifle with serial number DFS008914 on or about August 18, 2021, in connection with his commission of Count One, by, including but not limited to, that the firearm was a means to carry out his threat to shoot FBI TFO D.D. and FBI SA G.H. the next time they came to his house.

## Maximum Statutory Penalties

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum sentence of 10 years' imprisonment.  Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.      Count Two carries a maximum sentence of 10 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

c.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 20 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.     **Offense Level Calculations**.

12

<u>Count One</u>

i.      The base offense level for Count One and the relevant conduct is 12, pursuant to Guideline § 2A6.1(a)(1).

ii.     The government contends and the defendant reserves the right to contest that the offense level is increased by 6 levels, pursuant to Guideline § 2A6.1(b)(1), because the offense involved conduct evidencing an intent to carry out such threat.

iii.    The offense level is increased by 2 levels, pursuant to Guideline § 2A6.1(b)(2)(A), because the offense involved more than two threats.

iv.     The government contends and the defendant reserves the right to contest that the offense level is increased by 2 levels, pursuant to Guideline § 2A6.1(b)(5), because the defendant is being convicted under 18 U.S.C. § 115, he made a public threatening communication, and knew or should have known that the public threatening communication created a substantial risk of inciting others to violate 18 U.S.C. § 115.

<u>Count Two</u>

v.      The base offense level for Count Two and the relevant conduct is 20, pursuant to Guideline § 2K2.1(a)(4), because the instant offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, namely the D.S. Arms model ZM4, multi-caliber, semi-automatic rifle with

13

serial number DFS008914, and defendant was a prohibited person at the time defendant committed the instant offense, as described in paragraph 9(c)(i) below.

vi.     The government contends and the defendant reserves the right to contest that the offense level is increased by 4 levels, pursuant to Guideline § 2K2.1(a)(6), because defendant possessed a firearm in connection with another felony offense, namely, of the threat to assault and murder a federal law enforcement officer, as alleged in Count One of the superseding indictment.

<u>Grouping</u>

vii.     Pursuant to Guideline § 3D1.2(d), Counts One and Two are not grouped. The highest offense level is 24, which is the offense level for Count Two, and is therefore assigned 1 unit, pursuant to Guideline § 3D1.4(a). Pursuant to Guideline § 3D1.4(a), Count One is assigned 1 unit because it is from 1 to 4 levels less serious than the group with the highest offense level. Therefore, there are a total of 2 units and the highest offense level is increased by 2 levels for a combined offense level of 26, pursuant to Guideline § 3D1.4.

viii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

14

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   ix.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:

   i.  On or about August 26, 2021, defendant was convicted of aggravated unlawful use of a weapon in the Circuit Court of Douglas County, Illinois, and was sentenced to 12 months' conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this sentence.

   d.  **Anticipated Advisory Sentencing Guidelines Range**.

  Therefore, based on the facts now known to the government, the anticipated offense level is 23 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 46 to

57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by

such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Forfeiture

15.    Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property involved in the offense.

16.     Defendant agrees to forfeiture of the following specific property to the United States:

   a.  a D.S. Arms, model ZM4, multi-caliber, semi-automatic rifle with serial number DFS008914, and associated ammunition;

   b.  a Savage, model 775, caliber 12-gauge, semi-automatic shotgun with serial number 219890, and associated ammunition;

   c.  Eleven rounds of Wolf Performance Ammunition, .223 Remington ammunition;

   d.  Thirty-nine rounds of Red Army Standard, 9mm Makarov ammunition;

   e.  One round of Wolf Performance Ammunition, 7.62x39mm ammunition;

   f.  One round of Remington Arms Company, 12-gauge ammunition; and

   g.  Five rounds of Remington Arms Company, 30-06 ammunition.

In doing so, defendant admits that the property described above was property involved in Count Two, as alleged in the superseding indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

17.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

18.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property recovered by law enforcement from defendant's residence in Machesney Park, Illinois on November 5, 2021: namely, any and all ammunition and body armor as defined by Title 18, United States Code, Sections 921(a)(17)(A) and (35), respectively. Defendant understands that the government, after publication of notice to others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

19.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 50056.

21.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

20

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was

determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, as part of defendant's presentation of arguments in mitigation of his sentence. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him,

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to

disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

29.    Defendant understands that, if convicted of Count One, a crime of violence, it shall be unlawful for him to purchase, own, or possess body armor, pursuant to Title 18, United States Code, Section 931.

## Conclusion

30.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter

prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

(Remainder of this page intentionally left blank)

34.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____

_____           _____
MORRIS PASQUAL                                JACOB BALABUSZKO
Acting United States Attorney                 Defendant


_____           _____
ROBERT LADD                                   JOHN M. NELSON
Assistant U.S. Attorney                       Attorney for Defendant

27

34.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___7/18/2024___

MORRIS PASQUAL
Acting United States Attorney

JACOB BALABUSZKO
Defendant

ROBERT LADD
Assistant U.S. Attorney

JOHN M. NELSON
Attorney for Defendant

27