UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACOB BALABUSZKO | No. 21 CR 50056<br><br>Judge Iain D. Johnston |

## GOVERNMENT'S SENTENCING MEMORANDUM AND CORRECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

For the reasons stated herein, the government respectfully requests that the Court impose a sentence of 57 months' imprisonment, which is necessary and reasonable upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).[1]

Defendant has pled guilty to one count of threatening to assault and murder a federal law enforcement officer (in violation of 18 U.S.C. § 115(a)(1)(B)) and one count of possession of a firearm by a felon (in violation of 18 U.S.C. § 922(g)(1)). In 2021, defendant was a member of the Boogaloo Bois, a far-right, anti-government extremist group. Defendant communicated with other Boogaloo Bois, repeatedly advocated for violence against law enforcement, and explicitly threatened to shoot two federal agents who had previously interviewed him. When law enforcement executed a search warrant at defendant's residence, law enforcement discovered defendant (a convicted felon) in possession of firearms, ammunition, and body armor.

### I. Factual Background

In December 2020 and January 2021, two federal law enforcement officers interviewed defendant during the performance of their official duties. Defendant, a member of the Boogaloo Bois who participated in an online Signal group chat for its members, communicated with other

---

[1] The Presentence Investigation Report is cited as "PSR," followed by the applicable paragraph number.

Boogaloo Bois and advocated for violence against law enforcement officers. On June 21, 2021, defendant stated: "I want badges, I want a collection of nasty, dented, piss and blood coated badges to put on my wall" and "All of us need to start doing shit to add to their workload. Pop their tires with a .22, pull down their CCTV cameras, burn their fucking houses down. Anything to make their job impossible to do." On August 18, 2021, defendant directly threatened two federal law enforcement officers (identified in the superseding indictment by their initials "D.D." and "G.H."): "Next time you two come to my house unannounced, I'm going to shoot you on sight, that is a threat." On the same day, defendant posted multiple videos from his residence, including one holding a D.S. Arms ZM4 semi-automatic rifle (which was later recovered during the execution of the search warrant in November 2021), detailing how he could perform an ambush if law enforcement came to his residence. Defendant continued his violent rhetoric toward those federal officers into October 2021, when he stated, "If [D.D.] shows up here . . . I'm gonna break bottles over his head until he fucking dies."

In November 2021, law enforcement obtained and executed a search warrant for defendant's residence. Inside, law enforcement located two firearms (a D.S. Arms ZM4 semi-automatic rifle and a Savage 775 12-gauge semi-automatic shotgun), various calibers of ammunition, and body armor. As a convicted felon, defendant was prohibited from possessing these items.

## II. Sentencing Guidelines and Criminal History

### A. *Offense Level Calculations*

The government agrees with the Guidelines calculations in the PSR with respect to Counts One and Two.

With regard to the calculations for Count One, the parties all agree that the base offense level is 12. PSR ¶ 35. The government agrees that a six-level enhancement for conduct evidencing an intent to carry out the threat (under Guideline § 2A6.1(b)(1)) is appropriate. PSR ¶ 36. The parties all agree that three threats were made and that therefore a two-level enhancement is appropriate (under § 2A6.1(b)(2)(A)). PSR ¶ 37. The government agrees that a two-level enhancement for inciting violence is appropriate (under § 2A6.1(b)(6)). PSR ¶ 38. The government agrees that a three-level enhancement (under § 3A1.2(a)(1) and (2)) is appropriate, because the victims were government officers and defendant's threats were motivated by that status. PSR ¶ 39. This results in an adjusted offense level of 25 for Count One. PSR ¶ 42.

With regard to the calculations for Count Two, the parties all agree that the base offense level is 20 because the firearm defendant unlawfully possessed had the capacity to accept a 30-round, high-capacity magazine. PSR ¶ 43. The probation department declined to apply the four-level enhancement for possession of a firearm in connection with another felony offense, pursuant to Guideline § 2K2.1(b)(6)(B), which the government recommended in the plea agreement. PSR ¶ 44. The government is no longer arguing for this enhancement. This results in an adjusted offense level of 20 for Count Two. PSR ¶ 48.

The government agrees with the probation department that a multiple-count adjustment is necessary. The criminal conduct related to the threats to law enforcement and the criminal conduct related to the firearm possession do not involve "substantially the same harm" as set forth in Guideline § 3D1.2, so therefore they are not grouped. The probation department correctly calculated that two counts with adjusted offense levels of 25 and 20 result in a total of 1.5 units, and therefore a Combined Adjusted Offense Level of 26. PSR ¶ 49-52. With defendant's acceptance of responsibility, the Total Offense Level is 23. PSR ¶ 56.

### B. *Criminal History Category*

The government agrees with the criminal history computation in the PSR. Defendant has one criminal history point and is in Criminal History Category I. PSR ¶ 60.

### C. *Advisory Guidelines Range*

An Offense Level of 23 combined with a Criminal History Category of I results in an advisory Guidelines range of 46 to 57 months' imprisonment. PSR ¶ 112.

### III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a Sentence of 57 Months' Imprisonment

As set out in Title 18, United States Code, Section 3553(a), the Court must consider several factors in determining the sentence, including but not limited to, the nature and circumstances of the offense, defendant's history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, provide adequate deterrence, protect the public, and to provide just punishment. Each of the factors is discussed below.

### A. *Nature and Circumstances of the Offense*

The nature and circumstances of the offense are serious. Defendant was a member of the Boogaloo Bois, a far-right, anti-government extremist group. Defendant communicated with other Boogaloo Bois, repeatedly advocated for violence against law enforcement, and explicitly threatened to shoot two federal agents who had previously interviewed him. Defendant's threats and communications in the Signal group chat are alarming: defendant wanted the "nasty, dented, piss and blood coated badges" of slain police officers as trophies and advocated burning down the residences of police officers. When law enforcement executed a search warrant at defendant's residence, law enforcement discovered defendant (a convicted felon) in possession of two semi-automatic firearms, numerous different calibers of ammunition, and body armor. The possession

4

of these items is particularly alarming in light of defendant's ongoing threats to ambush law enforcement officers, and defendant's admissions that he had the capacity to carry out the threats he was making to the other Boogaloo Bois.

        B.    *History and Characteristics of the Defendant*

The history and characteristics of this defendant should concern the Court. Although defendant led a law-abiding life prior to enlisting with the United States Army, he has been radicalized in the years since his discharge in 2018. As defendant admitted in his plea agreement, during the months leading up to his arrest in this case, defendant repeatedly discussed setting up law enforcement for an ambush (see the June 11, 2021 and August 18, 2021 messages, referenced above). Defendant also stated that he wanted to collect the badges of dead law enforcement officers (June 21, 2021 messages) and encouraged other Boogaloo Bois to engage in targeted attacks on law enforcement, including burning down their houses (June 21, 2021 messages). These statements are consistent with what has been reported by defendant's family, which is that he "had been dealing with mental health issues" since his discharge from the military and that he may be suffering from post-traumatic stress disorder (PTSD).

In the years between his 2018 discharge and his 2021 arrest in this case, defendant demonstrated a reckless disregard for basic firearm safety. In a 2019 encounter with law enforcement (PSR ¶ 63), defendant and his girlfriend were handling numerous firearms, including AR-style rifles, and conducting "drills and dry fires" while heavily intoxicated (a portable breath test yielded a .201 BAC for defendant). Defendant also possessed at that time several concerning items, including armor-piercing ammunition, a plate carrier, and night-vision goggles. Defendant admitted that he grabbed a firearm magazine when he saw officers' flashlights outside his

5

apartment, which could have quickly escalated this encounter into one that had deadly repercussions for the defendant, his girlfriend, or law enforcement officers.

The circumstances of his October 13, 2020 arrest and subsequent conviction (PSR ¶ 59) are extremely concerning. The officer in that case located a weapons trove in defendant's vehicle that included multiple firearms (including two AK-47s), large-capacity magazines, and military equipment, including a plate carrier. Defendant's explanation for why he was traveling across the country in a mobile armory was inconsistent with the explanation of his passenger, and even if the Court accepts defendant's explanation that he "wanted to remove accessibility to [the firearms] if confronted by Antifa at his home," it demonstrates that defendant is an impulsive individual who turns to firearms as the first solution to any situation.

      C.    *The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment.*

As previously detailed, defendant's disdain for law enforcement and the rule of law is obvious. A significant custodial sentence is necessary to impress upon the defendant the gravity of his criminal conduct, promote respect for the law, and provide just punishment.

      D.    *The Need for the Sentence to Afford Adequate Deterrence and Protect the Public*

A prison sentence within the applicable Guidelines range will provide just punishment for this offense, will afford adequate deterrence, and protect the public. Both general and specific deterrence call for a significant custodial sentence. The Court should of course consider general deterrence: neither threatening to ambush and kill federal law enforcement officers nor possession of semi-automatic firearms as a felon should be tolerated.

Defendant's demonstrated attitude toward law enforcement shows that he is also in need of specific deterrence. As previously detailed above, defendant's behavior poses a significant

danger to the community. Since his discharge from the Army in 2018, his behavior has ranged from reckless (handling firearms while intoxicated) to concerning (unexplained travel across the country with multiple firearms) to terroristic (the conduct before the court in this case).

Furthermore, according to a U.S. Sentencing Commission study of federal offenders released in 2010, firearms offenders recidivate at a higher rate than all other offenders (69% for firearms offenders compared to 45.1% for other offenders). U.S. Sentencing Comm'n, Recidivism of Federal Firearms Offenders Released in 2010 at 6 (Nov. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20220209_Recidivism-Firearms.pdf (last visited November 5, 2024). The study found that the increased recidivism rates of federal firearms offenders existed across all criminal history categories and all age groups. *Id.* at 7. In addition, firearms offenders who recidivated were more likely to be rearrested for more new crimes than other offenders who recidivated, *id.* at 23, and firearms offenders recidivated sooner than other offenders, *id.* at 24. During the first year after release into the community, 28.4% of federal firearms offenders were rearrested. *Id.* The most common offenses at rearrest for federal firearms offenders was found to be assault, followed by drug trafficking offenses. *Id.* at 27. But federal firearms offenders were also more likely to be rearrested for homicide or robbery offenses as compared to other offenders. *Id.* Thus, a significant sentence of imprisonment within the advisory Guidelines range is necessary to provide specific deterrence to defendant and protect the public from additional crimes committed by him.

**IV.     Other Corrections to the PSR**

In paragraph 8 of the PSR, the government believes that this should be corrected to reflect that Judge Johnston, not Judge Jensen, granted the government's motion to reconsider detention of the defendant.

In paragraph 37 of the PSR, the government believes that the correct Guideline citation should be to § 2A6.1(b)(2)(A) (not § 2B6.1(b)(2)(A)).

In paragraph 38 of the PSR, the government believes that the correct Guideline citation should be to § 2A6.1(b)(6) (not § 2B6.1(b)(6)).

## Conclusion

Accordingly, the government respectfully requests that this Court impose a sentence of 57 months' imprisonment to be followed by 3 years of supervised release, and a $100 special assessment.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s *Robert S. Ladd*
ROBERT S. LADD
Assistant United States Attorney
327 S. Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S SENTENCING MEMORANDUM**

was served on November 5, 2024, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ *Robert S. Ladd*
ROBERT S. LADD
Assistant United States Attorney
327 S Church Street, Suite 3300
Rockford, IL  61101
(815) 987-4444