UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 2021-cr-50056 |
| ) | |
| JACOB BALABUSZKO, ) | |
| ) | |
| Defendant ) | |

### DEFENDANT'S PRESENTENCE MEMORANDUM

### I. INTRODUCTION

This Presentence Investigation Report deals with a young military veteran who grew up in an ordinary place as an extra ordinary child. In his early years it was the rage to treat hyper-active children with Ritalin.

A cursory look at the side effects of Ritalin lists the following: chest pain, breathing problems lightheadedness, hallucinations, new behavior problems, aggression, hostility, paranoia, unexplained wounds, and skin color changes. Those side effects are the ones you are directed to get immediate medical attention for. Ritalin also can cause insomnia when taken late in the day, depression and suicidal thoughts, as well as anxiety. It causes addiction after long-term use. Slow withdrawal is recommended. Also recommended is a comprehensive work up as ADHD is an easy diagnosis common with pediatricians. But that diagnosis is not always accurate.

It is on that backdrop, or canvas if you will, we will examine Jacob Balabuszko. We will examine the P.S.I in detail, challenge some of the facts and content. We will contest his guideline calculations on the threat count. We will examine how Jacob Balabuszko fits with the §3553(a) factors. We will address conditions of supervised release.

Mr. Balabuszko is a fascinating young man, a typical of the many, many persons charged that counsel has represented. Mr. Balabuszko has a workable plan for rehabilitation and redemption. The hope is that he will be able to utilize that plan with the strong support and guidance of the U. S. Probation Office.

## II. OBJECTION TO CONTENT OF THE P.S.I.

A. P. 8, paragraph 29. Mr. Balabuszko believes that this paragraph is incomplete. He suggests that the words – defendant stepped out of the house at the direction of the authorities and surrendered without incident in the early morning hours outside his residence.

B. Page 8, paragraph 30. Mr. Balabuszko believes this paragraph is incomplete as well. He suggests that the language should be added to note that the semi-automatic rifle in his possession was a manufacture spec rifle that accepted a 30-round magazine as all over counter modern AR 15 rifles do.

C. Page 14, paragraph 59. Mr. Balabuszko believes this paragraph should be clarified to reflect that the fines and costs were paid by his father and the Petition(s) were dismissed accordingly. See the top of Page 12 (paragraph 59), When reviewing this case with Mr. Balabuszko and the open county belief (Douglas County) he sighed and said, "I'm just a kid from Belvidere…"

D. Historically, counsel has always objected to what now is references as Other Arrests beginning between paragraphs 61-62. It encompasses in paragraph 63 which involves a case that was dismissed by the State in Rock County contested by Mr. Balabuszko represented by counsel. There were no armor piercing bullets, night goggles nor did he drink anything from a bottle of Hennessy. It appears clear that Mr. Balabuszko exercised his right to remain silent. The body armor he had the opportunity to purchase form the U.S. Army upon separation by honorable

discharge. Counsel simply requests that the court not consider any dismissed or uncharged cases in Mr. Balabuszko's sentencing. See also uncharged allegations in Page 20, Paragraph 84.

### III. OBJECTION TO GUIDELINE CALCULATIONS

A. P.S.I Page 8, paragraph 36. Both the Plea Agreement and the Presentence Investigation Report reference USSG §2A 6.1 (b)(1) which reads substantially as follows:

"(b) Specific Offense Characteristics (1) If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels."

Mr. Balabuszko contests this enhancement on legal grounds. Please note the case of *United States v. Saverwein*, 5 F.3d 275 (7th Cir. 1993). The facts of the case involve a defendant who actively sought to buy weapons and find a sniper to fire his sniper rifle of choice to murder the President (President Bush at the time) whom he had threatened. He recruited, as it turned out, two members to his assignation team to help him with his detailed assignation plan. Both were law enforcement officers.

He took steps under the watchful eye of the authorities as he planned to follow through with his assassination plan. He even told his "associates" the kind of rifle he thought he would need. He also asked them to obtain an expert qualified marksman because his eyesight was bad, and he was a bad shot.

Of course, the 7th Circuit affirmed the enhancement. The court reviewed the case under the clearly erroneous standard. The court noted it believed that it needed to have evidence of what activity in furtherance the defendant engaged in furtherance of the threats he had made to assassinate the President. The evidence was clear and convincing.

Compare and contrast the facts of that case with the facts in Mr. Balabuszko's case. He clearly made the threats that he is accused of, and has plead guilty to. This court has heard those threats in the government's successful appeal of the bond set by Magistrate Judge Jensen.

The court may note that the P.S.I. on Page 6, paragraph 24 notes that Mr. Balabuszko made the threats to expose what he believed could be an informant in the Signal Chat group. He thought, with some justification as it turns out, that there was an informant in the group. He knew that by exposing himself as a threatening individual he would likely become an individual who would become of interest to the authorities. The group would then know there was an informant and have to act in whatever manner it chose. Mr. Balabuszko believes they disbanded, but does not know, nor care.

The P.S.I notes on P. 7, paragraph 26 that he had the capacity to carry out his threats. Tellingly, however, he never did anything to carry out his threats – as required by the *Saverwein*, Ibid. case – and his statement is simply true, but does not justify any enhancement.

It is very important to note that when Mr. Balabuszko was arrested after walking outside unarmed and peacefully without incident. There is no evidence – other than making the horrifying threats as his aunt described in the P.S.I. he never took any steps to effectuate them. He was under surveillance – even by helicopter which he knew the name of and did nothing in response. The six-point enhancement should not be allowed.

B. P.S.I. Page 9, paragraph 38 This objection involves USSG §2A 6.1(b)(5) and the two point enhancement assessed in the P.S.I.. and was contained in the Plea Agreement. It substantially reads as follows:

"(5) If the defendant (A) is convicted under 18 U.S.C. § 115, (B) made a public threatening communication, and (C) knew or should have known that the public threatening communication created a substantial risk of inciting others to violate 18 U.S.C. § 115, increase by **2** levels."

Its application requires three things, two of which are contested on a legal basis. Mr. Balabuszko contests that he made a public communication on the basis that his communication

4

was made to a closed Signal Chat Group. As argued previously (unsuccessfully) in Mr. Balabuszko's Motion to Dismiss this charge, he did not make the threats knowing that the authorities were in the loop as it were. The argument is that the Signal Chat Group by definition was a closed group and the communication was not published.

Similarly, Mr. Balabuszko argues that he could not have known that his threats would, or did create a substantial risk of inciting others to violence. To the best of Mr. Balabuszko's knowledge, there was nothing that happened as a result of his severe threats other than the Signal Chat group likely went back to their "normal" regular lives after his arrest. The upshot of his threats resulted in him getting arrested and remaining in the Winnebago County Jail for the last 36 months.

The closest inciting to riot case available does not resolve the issues of the guideline cited, but provides an overview of a speech threatening violence and speech that would incite or lead others to commit violence. See *U.S. v. White*, 610 F.3d 956 (7th Cir. 2010) That case involved a radio commentator who discussed the use of violent protest as a tactic of change but did not advise it.

Page 9, paragraph 39, This guideline enhancement was added by the Probation Department and was not considered by the prosecution or defense. Mr. Balabuszko objects because application Note 2 seemingly prevents its application. Application Note 2 reads substantially as follows:

"2. Applicability of Chapter 3 Adjustments – If the defendant is convicted under 18 U.S.C.§ 1521, apply §341.2 (Official Victim)"

It stands to reason that since Mr. Balabuszko was not so convicted of 18, U.S.C. 1521, therefore U.S.S.G §341.2, in its fullness does not apply. It appears that the application is misguided and

5

outside the depth and breadth of what the guidelines are designed to accomplish. Specifically, Mr. Balabuszko argues that this application to artificially enhance, the sentencing range. There is no notice, nor was 18 U.S.C. 1521 charged as required by existing case law to bring the cited Guideline to bear

C.. If Mr. Balabuszko's challenges to his Guideline enhancements for the offense above are deemed valid by the Court his guideline level for that offense would be 14. The total number of units would remain at 15, because the differential of 20-14 would still count as 1.5 units. The guideline range, however, would be 21-3 with the proverbial "good points" as Judge Reinhard was wont to say applied. The guideline range for level 18 with a criminal history of 1 result in a guideline range below Mr. Balabuszko's current time served of 36 months and a few days.

## IV. OBJECTIONS TO CONDITIONS OF SUPERVISED RELEASE

A. Mandatory Conditions of Supervised Release.

1. Condition 7 is unnecessary according to Mr. Balabuszko and the content of the P.S.I. His point of contact upon release is his Aunt Mary with whom he plans to live and attend McHenry Community College. It is within walking distance, and Mr. Balabuszko is planning on obtaining his degree as quickly as possible. Aunt Mary classifies him as a social drinker.

B. Discretionary Conditions of Supervised Release.

1. Condition 7 as well is unnecessary for like reasons. It is a continuation of alcohol restrictions for which there is little factual basis in the P.S.I. Mr. Balabuszko will obtain employment, enroll in McHenry Community College and engage in mental health counseling. With this workable plan for a new, productive life, there is neither a need at this time nor will there be enough time to engage in alcohol prohibition.

2. As a note, why does condition 8 include a BB gun and pellet gun?

3. Condition 9(a) is opposed for the reasons explained above. 9(c) is opposed as well as Mr. Balabuszko believes he was harmed by medications taken for this ADHD suggestion during school. He simply cannot take any medication – no matter how helpful any doctor might believe that medication could be due to the trauma that will be introduced. The desire to get well must come from within. Mr. Balabuszko has made that commitment. If Mr. Balabuszko falls short, it will be on him.

4. Condition 16b and Condition 16c or as otherwise known as reasons to get terminated from your new job. The objection is to the "at work" language. This then is all of 16(b) and the first two words of 16(c).

5. Condition 18. Mr. Balabuszko requests that the words "in the officer's official capacity about criminal activity" be added.

6. Condition 23 as written says that Mr. Balabuszko must always submit to a search by a Probation Officer. Then after the fact the Probation Officer is directed to have reasonable suspicion that Mr. Balabuszko is in violation and any area searched has evidence of that violation. This condition ought to start out with "When a Probation Officer has reasonable suspicion…" Thereafter should come the warnings that any failure to submit to a search could result in revocation. The condition is written backwards.

C. Special Conditions of Supervised Release.

1. Conditions 13, 14. Mr. Balabuszko objects to these conditions as they are standard restrictions placed on child pornographers. Since the P.S.I.s are an open book in the Bureau of Prisons this would raise issues and danger for him that are unnecessary.

7

2. Condition 15. Mr. Balabuszko objects to this condition. He obviously is unable to pay a fine. His VA Benefits will help with college tuition, and he will live with his Aunt Mary while on supervised release. He hopes to obtain employment, but has none at this time.

3. Paragraph 16. If this condition is imposed, Mr. Balabuszko asks that the language "Such a consent shall not be unreasonably withheld." Technology is the way of the world. Mr. Balabuszko must join that world if he is to grow into the successful person he needs to be.

4. Paragraph 18 and 19 seem impermissibly vague as written.

## V. DISCUSSION OF §3553 (a) FACTORS

Mr. Balabuszko is a veteran who served in the United States Army. He not only had the benefit of learning discipline – there is the right way, the wrong way, and the army way – but for the first time he was accepted and cared for by a group of young men who accepted him as one of their own.

His Seargent identified his problems with his lengthy medication history as a child, and was able to help him overcome his feelings of lack of accomplishment and belonging he feels was the result of an absentee father and overly domineering and demanding mother. He fit in. He felt good enough to leave the army after his service without re-enlisting with an honorable discharge, veteran's benefits, and hope for the future.

He returned home likely thinking of himself as the conquering hero. But his home in Belvidere had not changed much – everybody had simply gotten older. By leaving the army as he soon realized he had given up a place where he belonged.

Mr. Balabuszko began to drift and was unable to accomplish what he wanted and knew he could accomplish. He became a member of a Signal Chat group that was united by the loose

philosophy of the Boogaloo Boys. It was eerily similar to his experience in the army, but not really.

He fell in love with his girlfriend who shared what excitement there was in the lifestyle of discussions of real democracy, the abstract idea of a better country the way the founders wanted it to be, and the love of guns. Like most Boone County boys, he had grown up hunting and had fond memories of outdoor activities, and outdoor exercises with his U.S. Army comrades and attendant successes there.

Mr. Balabuszko has told the court that he wants to enroll in McHenry Community College using his V.A. earned benefits. Jacob Balabuszko is on the comeback trail. As has been made clear, he plans to reside – after finishing any obligations he has to the court and society – with his Aunt Mary Sherman, who had stepped forward to be his custodial guardian. Mary has been of great support to Jacob during his time in the Winnebago County Jail. She loves him dearly, but as a retired teacher knows how hard he will have to work to overcome his past. She will be there to support him when he needs it, but also be there to point out, if necessary, that he must stay on task. She knows he can do it. She also knows it is up to Jacob to take advantage of his opportunities to recover, and move positively forward. She is family in the true sense of the word.

Unlike many of the clients' counsel has represented as a panel attorney over the years, Jacob Balabuszko has the skills, smarts and ability to educate himself to the point where he can rise above his criminal record. Often advice to invest in your own human capital falls by the wayside by the limitations that are endemic in many of our clients for their lack of a foundation.

9

Jacob Balabuszko has limitations that are apparent from the P.S.I and should no not need further discussion. The dangers of an ADHD diagnosis and treatment by the administration of Ritalin, or any other earlier drugs cannot be understated.

But they can be overcome. The structure of the United States Army was good for Jacob Balabuszko to a point. The structure of the federal court system has had a similar effect.

While he has been in the Winnebago County Jail, Jacob has been making use of his time. As the PSI notes, Jacob has earned numerous certificates, taken the CNC class and was invited back when another whole class quit. He received further instruction which he took advantage of.

It may seem old-fashioned, but he has participated regularly in Bible study, and has taken faith to heart without wearing it on his sleeve. He was assigned a gay cellmate whom he stood up for. He has tried to learn under somewhat harsh conditions. One of the things he did learn was how to get along, and get by, an important lesson in his current environment.

He has waived his rights to appeal. There was a long delay in getting to this day of sentencing, but not because of him dragging his feet. The government's discovery in this case came at a glacier clip. Jacob Balabuszko still is not quite sure what evidence there may be that could help him. But he knows and has pled guilty to what he knows he did. He is asking the court to be admitted to the ARC program by court order. They have a very effective program for those on the "wrong side of the law." Generally, people in the ARC Program are good candidates for rehabilitation. They are screened before they are given letters of acceptance. Jacob Balabuszko is such a person, and counsel is in possession of his acceptance letter.

Truthfully, there is little more that either society or Mr. Balabuszko can benefit from any further incarceration. Mr. Balabuszko has lasted 36 months in the Winnebago County Jail without incident. He is polite in his court appearances, and gives thoughtful answers when

questioned. He is compliant when discussing his case, and patient with delay. He remains interested in the process. Further punishment of additional incarceration will have no effect.

Mr. Balabuszko needs mental health counseling, a structure of attainable goals that he can accomplish, and monitoring. He will not recidivate simply because he has no desire to ever see the inside of a jail cell again.

The remainder of Jacob Balabuszko's story is yet to unfold. The fire to succeed and overcome his adversity has been stoked. His adaptive abilities have increased. He has the ability to succeed on his own. He can benefit from some period of supervised release which should not be overlong. It is undetermined whether Mr. Balabuszko or the court can do any more for himself or society under a criminal justice sentence. His criminal history is Category One.

All of this discussion it is hoped will be helpful to the court in its assessment of the individual §3553(a) factors. Mr. Balabuszko is ready to move on. It is respectively asked if the court will let him try his hardest with what help is available to him to do so. He can not only survive, but flourish.

Mr. Balabuszko has told the court he was in a dark place when he was first arrested. The light has shined on him. With hard work and effort, the light can continue to do so.

## VI. CONCLUSION

For all of the reasons contained in this Sentencing Memorandum not limited to Mr. Balabuszko's recognition of the crimes he committed, his realistic plan for success, and the expense of warehousing him the Bureau of Prisons, Mr. Balabuszko seeks a sentence not more than 40 months, and the courts order that he may participate in the ARC Program to which he has been granted access, to begin upon his release from custody as a condition of his supervised release.

Respectfully submitted,
/s/ John M. Nelson
Attorney for defendant, JACOB BALABUSZKO

## CERTIFICATE OF SERVICE

I, John M. Nelson, hereby certify that on November 7, 2024 I electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the Court's CM/ECF system. Counsels for all parties in this case are registered CM/ECF users, and have been served through the Court's CM/ECF system.

Dated: November 7, 2024

s/ John M. Nelson

Attorney for defendant, Jacob Balabuszko

JOHN M. NELSON #2031671
Attorney at Law
P. O. Box 2236
Loves Park, IL 61131-0236
815.964.8800
johnmnelsonlaw@gmail.com